## WILLS POINT BANK v. BATES, REED & COOLEY ET AL.
### No. 2779.

**1.   Injunction to Stay Execution Within Twelve Months.**—The provision (Rev. Stats., art. 2875) that no injunction restraining a judgment shall be granted after twelve months after such judgment, does not forbid an injunction within twelve months after the affirmance of such judgment on appeal, although applied for more than that time after the rendition of the judgment in the District Court.

**2.   Multifariousness.**—Where several judgments stand against the same persons, the questions with regard to their validity and interpretation being the same, executions thereon were levied upon the same property, and the question upon which it is sought to restrain the judgments was common to all the cases, and affect all alike, and where the litigation theretofore had been conducted as if the cases had been but the one case; *held*, that the defendants in the several judgments may join all the plaintiffs in the several suits as defendants.

**3.   Injunction, when the Remedy.** — When an error occurs in the proceedings leading to a judgment, or in the judgment itself, the error can only be corrected by proceedings in the case by appeal, etc.   But if the matter complained of grew out of unlawful proceedings subsequent and with regard to the process issuing out of the judgment, the remedy is by injunction.

**4.   Judgment in Suit to try Right of Property.**—Under article 4843, Revised Statutes, upon rendition of judgment against the claimant prosecuting in the trial of right to property judgment should be rendered against him and sureties for the value of the property, with legal interest thereon from the date of the claim bond; yet the judgment creditor could not collect more than his judgment with interest and ten per cent damages, etc.   This is not materially altered by the amendment, April 2, 1887. While a judgment rendered in accordance with the statute would not be error, yet an effort to enforce such judgment according to its terms would be ground for injunction for the excess over the amount of the original judgment, interest, and damages.

**5.   Statutes Discussed.**—Revised Statutes, articles 4841, 4843, and amendment to article 4843 of April 2, 1887, discussed.

**6.   Practice.**—The dismissal of the original action under which an attachment was levied, had the effect of a release of the attached property.   No judgment could be obtained by the plaintiff in such case against a claimant of the attached property after such dismissal of the original suit.

**7.   Release of Joint Obligor.**—The doctrine seems to be well established that such a release of one of a number of joint debtors discharges the others.

ERROR from Van Zandt.   Tried below before Hon. John L. Sheppard. The opinion states the case.

*J. C. Kearby,* and *Russell & Yantis,* for plaintiffs in error.— 1.   An injunction should not be dissolved in the absence of an answer directly denying the allegations in the bill by some one shown to be cognizant of and conversant with the facts, and where fraud is charged against several the answer must be made by each one of the defendants.   Rev. Stats., art. 2890; Friedlander v. Ehrenworth, 58 Texas, 350; Orr & Lindsey v. Moore, 1 Ct. App. C. C., sec. 587; High on Inj., secs. 904, 909, 915.

2.   K. Mandel & Co. having failed to obtain a judgment against Gugenheim on the claim upon which they levied upon the stock of goods,

but their case having been dismissed, the taking of the judgment by them in the trial of the right of property issues, in the absence of a judicial hearing, but simply as a party to the agreement to make the Bates, Reed & Cooley case a test case, was such a fraud upon appellants as a court of equity will relieve against. Rev. Stats., art. 2873; McMurray v. McMurray, 67 Texas, 665; Eason v. Eason, 108 Mass., 590; Freem. on Judg., secs. 97, 99.

3. The plaintiffs' bill being for the purpose, among other things, of preventing K. Mandel & Co. from enforcing their execution, they having established no claim against Gugenheim, it was an abuse of discretion in this case for the court to award the $576.10 damages against appellants, especially in the absence of a trial on the merits. Rev. Stats., art. 2894.

4. If the appellees in this case executed and delivered to Williams a full release from all liability on the claim bonds, and also from the judgments in the cases after their rendition, such release will operate as a discharge of all the other joint obligors and judgment debtors. Bridges v. Phillips, 17 Texas, 128; McIlhenny v. Blum, 68 Texas, 197; Bank v. Doolittle, 14 Pick., 123; Tuckerman v. Newhall, 17 Mass., 581; Elliott v. Holbrook, 33 Ala., 659; Vandever v. Clark, 16 Ark., 331; Rowley v. Stoddart, 7 Johns, 207; Brown v. Marsh, 7 Vt., 327; Bunson v. Kincaid, 3 Pa. St., 57; Ransom v. Farish, 4 Cal., 386.

*C. B. Kilgore, J. G. Kearby* and *Crawford & Crawford,* for defendants in error, cited Rev. Stats., art. 4843; Bryorly v. Clark, 48 Texas, 352; Bomar v. Parker, 68 Texas, 440; Endicott v. Mathis, 9 N. J. Eq., 110; Black v. Higgins, 2 Tenn. Ch., 780; Harn v. Phelps, 65 Texas, 597; Crawford v. Wingfield, 25 Texas, 415; 1 High on Inj., secs. 173, 226; McMurray v. McMurray, 67 Texas, 670; Metzger v. Wendler, 35 Texas, 379; Livingston v. Wright, 68 Texas, 707; Caperton v. Wanslow, 18 Texas, 132; 1 Pars. on Con., 5 ed., p. 28; Bish. on Con., secs. 870, 873; Parmelee v. Lawrence, 44 Ill., 406; Bonney v. Bonney, 29 Ia., 448; Seymour v. Butler, 8 Ia., 304; Gillis v. Rosenheimer, 64 Texas, 245; Carter v. Griffin, 32 Texas, 212; Clegg v. Varnell, 18 Texas, 307; Thomas v. Chapman, 62 Texas, 193.

HENRY, ASSOCIATE JUSTICE. — The "Wills Point Bank" was the name of a partnership, composed of H. Fuller, W. A. Williams, J. M. Lybrand, and J. W. Fuller.

J. A. Gugenheim & Co. were insolvent merchants, who owed debts to Wills Point Bank and to eight other firms, all of which are appellees in this cause.

Gugenheim & Co. conveyed their property to Wills Point Bank. Seven of the other creditors sued out and caused attachments to be levied on the property, and the eighth one caused a distress warrant to be levied on

it. The Wills Point Bank proceeded to try the right of property in each case, with separate bonds and affidavits.

Agreements were made in all of the other cases that they should abide the result of the litigation in the Bates, Reed & Cooley case. That suit was litigated to a final judgment in favor of Bates, Reed & Cooley, and was affirmed by this court at its Tyler Term, 1888. Wills Point Bank v. Bates, Reed & Cooley, 72 Texas, 137.

In pursuance of the agreements judgments were entered in each of the cases in the District Court against the Wills Point Bank, and executions were sued out in all of the causes and levied upon the property of the said H. Fuller.

H. Fuller, J. M. Lybrand, and J. W. Fuller instituted this suit, making all of the plaintiffs in said judgments, and said W. A. Williams and the sheriff of Van Zandt County, defendants.

The petition charges that on the 12th day of October, 1887, the plaintiffs in said attachment suits had judgments therein against the said J. A. Gugenheim & Co. for the following amounts, respectively: Bates, Reed & Cooley for $685.65, with interest at 8 per cent per annum from September 20, 1883; Adler, Goldman & Co. for $684.36, with 10 per cent interest from April 9, 1884; Clark Brothers for $303, with 8 per cent from April 9, 1884; Wolf Bros. & Bath for $468.85, with 8 per cent from April 9, 1884; M. Schneider & Bro. for $551.45, with 8 per cent from April 9, 1884; Lonchein Brothers for $659.30, with 8 per cent from April 9, 1884; Levenson & Co. for $672, with 8 per cent from April 9, 1884.

The petition charges that on said date—the 12th day of October, 1887 —said judgment creditors recovered judgments in the trial of right of property cases against the Wills Point Bank as follows: Bates, Reed & Cooley for $1424.41; Clark Brothers for $947.28; M. Schneider & Brother for $1214.77; Adler, Goldman & Co. for $1118.46; Lonchein Brothers for $1301.15; L. Levenson & Co. for $1417.53; Wolf Brothers & Bath for $1026.66.

The petition charges that K. Mandel & Co. discontinued their suit against J. A. Gugenheim & Co. without taking any judgment against them, but on said date (October 12, 1887) a judgment was rendered in their favor in their trial of right of property case against the Wills Point Bank for the sum of $862.10.

The petition charges that the amounts of the judgments in the trial of the right of property cases were arrived at by taking in each case the value of the property on which the distress warrant and various writs of attachment were levied, as assessed by the officer who levied the process, and adding thereto interest on said value from date of bonds and 10 per cent damages.

Plaintiffs charge that while the aggregate amount of the judgments against said J. A. Gugenheim & Co. did not exceed $5619.09, the aggre-

gate amount of the judgments rendered against the Wills Point Bank was $9312.30.    While the aggregates stated in the pleading may not be mathematically correct, they are approximately so, and serve to illustrate the question at issue.

The petition for injunction, in addition to the foregoing matters, alleges that "at the time of the rendition of said judgments against the Wills Point Bank, and prior and subsequent thereto, the aforesaid W. A. Williams fraudulently conspired and confederated with all of the plaintiffs in said judgments, with the purpose of injuring and defrauding petitioners, to testify in favor of said judgment plaintiffs that petitioners had admitted to him that the sale from Gugenheim & Co. to the Wills Point Bank was intended as a mortgage only, and that said Gugenheim retained an interest in the property transferred." All of which they allege was false. It is alleged that in furtherance of said fraudulent purpose and agreement said Williams gave said testimony as a witness in the trial of said cause of Bates, Reed & Cooley against the Wills Point Bank.

The petition charges that in consideration of said services said judgment plaintiffs "agreed and contracted with the said W. A. Williams that they would acquit, release, and discharge him from any and all liability from any of the aforesaid judgments, and that in pursuance of said design said creditors have acquitted, released, and discharged the said Williams from any and all liability connected with, incident to, or growing out of said judgments; that said release, discharge, and acquittance of said Williams is in writing; that said Williams was the partner in business of petitioners and in the purchase from said Gugenheim & Co., and by the terms of their partnership he was liable for the payment of one-third part of said judgment debts."

The petition charges that plaintiffs did not know until after said judgments were rendered that said Williams had been discharged and released from said judgments.

The petition charges that said judgments were not only rendered for excessive amounts, but that they, and especially the one in favor of K. Mandel & Co., were irregular and illegal in other particulars.

The petition prays for the writ of injunction restraining the sale of the property levied upon, and forbidding further proceedings to enforce the judgments against the Wills Point Bank. And if not found entitled to that relief, plaintiffs ask that no more be allowed to be collected under said judgments than the amounts of the judgments against Gugenheim & Co.

A temporary injunction was issued as prayed for.

Defendants appeared and filed exceptions to the petition on the following grounds:

"1. Because the petition shows on its face that each execution sought

to be enjoined was issued on a judgment rendered more than one year before the filing of said petition.

"2. Because it appears that the judgments sought to be enjoined are separate and distinct causes of action, and that there was no community of interest between defendants authorizing all of said judgments to be joined in the same suit.

"3. Because the petition shows no equity.

"4. Because it is sought to review and correct the judgments mentioned by injunction instead of by appeal."

The defendants also filed an answer.

The court sustained the exceptions and dismissed the petition, awarding ten per cent damages to the defendants who were judgment creditors, but saving to plaintiffs such rights as they may have against K. Mandel & Co.

The objection that more than twelve months had elapsed between the rendition of the judgments and the grant of the writ of injunction is not applicable to this case.

If it was otherwise, still the fact that the injunction was granted within twelve months from the affirmance of the Bates, Reed & Cooley case, and that all of the judgments were made to depend upon that, would be a sufficient answer to the objection.

Nor do we think that the exception on the ground that the petition was multifarious, because the interests of the defendants were separate and distinct from each other, ought to have been sustained.

In the case of Clegg v. Varnell, 18 Texas, 304, this court, referring to Story's Equity Pleadings, said: "There is not any positive, inflexible rule as to what constitutes multifariousness, which is fatal to the suit on demurrer. The courts have always exercised a sound discretion in determining whether the subject matters of the suit are properly joined or not. The substance of the rules on the subject appears to be that each case must be governed by its own circumstances, and whether it be multifarious or not must be left in a great measure to the sound discretion of the court. Defendants ought not to be put to inconvenience and expense in litigating matters in which they have no interest, and on the other hand unnecessary litigation and multiplicity of suits ought to be avoided. While defendants are protected, plaintiffs must not be put to the necessity of bringing two suits instead of one."

We think this doctrine applies with peculiar force to the case before us. The judgments against plaintiffs originated in the same transaction. The questions with regard to their validity and interpretation are the same. The executions were levied upon the same property, and the question upon which it is sought to restrain them was common to all the cases, and substantially affect them all alike, and in addition to that the litigation has

heretofore been conducted as if the different proceedings were but one cause.

The exception to plaintiffs seeking relief from the judgments against them as members of the Wills Point Bank firm by injunction instead of by appeal or writ of error to revise the judgments and correct them if found erroneous, has no proper application to this case.

When an error occurs in the proceedings leading to a judgment or in the judgment itself, it is undoubtedly true that the error can be corrected only by proceedings taken in the case, either in the nature of a motion or proceeding for a new trial or review, or by appellate proceedings.

When the error does not rest in the proceedings leading to the judgment or in the judgment itself, but in unlawful proceedings occurring subsequently with regard to the levy and collection of process issuing out of the judgment, the remedy by injunction is appropriate.

Plaintiffs in the attachment suits, by prevailing in the trial of right of property cases, acquired thereby the right either to have the attached property of Gugenheim & Co. returned to them so that they could collect out of that their judgments against Gugenheim & Co., including costs and interest, or to have execution for their debts against the claimants and their sureties. They were in any event entitled to collect from the Wills Point Bank, as unsuccessful claimant of the property, ten per cent damages upon the amounts of their respective judgments against Gugenheim & Co.

If the attached property was not returned, while the remedy was changed the amounts of their demands were not thereby enlarged. In that state of case they became entitled to executions to enforce collections from the Wills Point Bank and the sureties on claimants' bonds of the amounts of their judgments against Gugenheim & Co., with ten per cent damages thereon, costs, and interest on the judgments against Gugenheim & Co. until they were collected.

These judgment creditors, when enjoined, were without authority of law undertaking to enforce through executions the collection of amounts greatly in excess of the amounts of the principal and interest of the judgments against Gugenheim & Co., including ten per cent damages thereon.

The record shows that the value of the property attached was, in every instance, greater than the amount claimed in the writ by virtue of which it was levied upon. The law in that state of case required the damages to be assessed "on the amount claimed under said writs." Rev. Stats., art. 4841.

Until the law was amended by the Act of April 2, 1887, the judgment to be rendered in trial of right of property cases was provided for by article 4843 of the Revised Statutes, reading as follows:

"In all cases where any claimant of property under the provisions of

this title shall fail to establish his right thereto, judgment shall be rendered against him and his sureties for the value of the property, with legal interest thereon from the date of such bond."

The petition shows that the judgments rendered against the Wills Point Bank on the 12th day of October, 1887, were entered strictly in pursuance of this statute, and as the assessed value of the property was in each instance much larger than the debt, and as interest and damages were calculated on the value of the property instead of upon the debts, it followed that the judgments were for a sum greater than the creditors had under the law a right to collect.

As long as the judgments were in the terms of the law, there existed no ground for setting them aside upon motion, or reversing them upon appeal. But while the judgments, being in the form prescribed or authorized by the statute, would be permitted to stand, it would still be necessary to give to them a construction consistent with the purpose of the law and with the rights of the parties to them. In order that the judgments might have only the operation that the law intended to give to them, it was necessary for the executions issued upon them to be only for such amounts as were given in the judgments against Gugenheim & Co., including interest and ten per cent damages thereon and costs.

By the amendment of 1887 the following language was added to the article (4843), what we have quoted from it still remaining as formerly:

"Such judgment shall be rendered in favor of the plaintiff in the writ, or of the several plaintiffs if more than one, and shall fix the amount of each plaintiff's claim; and in case such judgment should not be satisfied by a return of the property, as provided in article 4845, then execution shall issue thereon in the name of the plaintiff for the amount of his claim, or of all the plaintiffs for the sum of their several claims, provided the amount of such judgment exceed such claim or sum; and in such cases the excess of such judgment shall enure to the benefit of any person who shall show superior right or title to the property claimed as against the claimant; but if such judgment be for a less amount than the sum of the several plaintiffs' claims, then the respective rights and priorities of the several plaintiffs shall be fixed and adjusted in the judgment."

That part of the article last quoted had been quite recently enacted when the judgments now in controversy were rendered.

Before the amendment we think that a judgment rendered in the terms of the statute should have been construed to have the same operation as the one provided for by the amendment. It was substantially so decided by this court in the case of Elser v. Graber, 69 Texas, 226, 227.

As until the amendment such judgments as those in controversy were in literal compliance with the statute in matter of form, and as when they were rendered the statute had been so recently changed and still preserved the exact phraseology of the old law, leaving it, when applied to

such judgments as those under consideration, still somewhat obscure, without changing the substantial rights under them from what they would have been as the article originally stood, we think the courts would not have been justified in refusing to grant relief against an unlawful use of them the same as would have been proper before the amendment was made.

The plaintiff in the attachment judgments, if no other objection to their enforcement exists, ought to be, upon this issue, enjoined from taking out executions upon their judgments for any amount in excess of the amounts of their judgments as rendered against Gugenheim & Co., including interest, with ten per cent damages on the amounts of their judgments on the 12th day of October, 1887, and costs of said suits.

K. Mandel & Co., never having obtained any judgment against Gugenhem & Co., ought to be, on this issue alone, enjoined from enforcing their judgment in any manner.

Appellees argue that plaintiffs' petition fails to show that the judgments against the claimants were excessive, because it does not allege what amounts of costs were recovered in the Gugenheim & Co. cases. While, in fact, it does not, it is yet evident that the excessive amounts do not include the costs.

Other matters complained of in the proceedings leading to the judgments in the trial of the right of property cases will not be considered, because if improper the remedy is not by injunction.

The exception that the petition shows no equity raises a question of importance in addition to those that we have discussed. It is whether the release of Williams discharged his partners. Counsel discuss this question in their briefs as if the answer of defendants is to be considered in disposing of it.

As we have said, plaintiffs' petition was dismissed upon the consideration of defendants' exceptions, and not upon their answer, and hence the answer is not before us for consideration; but, in view of another trial, we say that neither the petition nor the answer are sufficiently specific with regard to the discharge, and while we might hold the petition sufficient in that particular on general demurrer, we would not hold the averments of the answer sufficiently certain and positive to dissolve the injunction, even if it could be held sufficient in other respects for that purpose.

We are of the opinion that upon the issue of the release in this case the answer should be sworn to by the defendants in person before it can be considered on motion to dissolve.

As the issues are now presented by the pleadings with regard to the effect of releasing Williams, we deem it neither useful nor proper to do more than express ourselves in a general way, and only upon the effect of an unqualified release.

The doctrine seems to be well established that such a release of one of

a number of joint debtors discharges the others.   McIlhenny v. Blum, 68 Texas, 197; Bridges v. Phillips, 17 Texas, 128; 1 Pars. on Con., 28; Elliott v. Holbrook, 33 Ala., 667; Vandever v. Clark, 16 Ark., 335; Tuckerman v. Newhall, 17 Mass., 584; Bonney v. Bonney, 29 Ia., 448; Brown v. Marsh, 7 Vt., 327; Parmelee v. Lawrence, 44 Ill., 405.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Delivered February 7, 1890.